## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PINCHAS RAUL,

                Plaintiff,

    v.

TERRAFORM POWER, INC., BRIAN
LAWSON, CAROLYN J. BURKE,
CHRISTIAN S. FONG, HARRY
GOLDGUT, RICHARD LEGAULT, MARK
MCFARLAND, SACHIN SHAH,

                Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by TerraForm Power, Inc. ("TerraForm" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning TerraForm and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against TerraForm and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Brookfield Renewable Partners L.P. ("BEP"), Brookfield Renewable Corporation ("BEPC"), 2252876 Alberta ULC ("Acquisition Sub," and together with BEP and BEPC, the "BEP Entities"), and TerraForm Power NY Holdings, Inc. ("Holdings").

2.     On March 16, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with the above parties, pursuant to which TerraForm will become an affiliate of BEP (the "Proposed Transaction") and TerraForm shareholders will receive either 0.381 Class A exchangeable subordinate voting shares of BEPC or 0.381 of a limited partnership unit of BEP per share (the "Merger Consideration"). The special meeting of shareholders to vote on the Proposed Transaction is scheduled for July, 29, 2020 at 11:00 a.m., Eastern Time.

3.     On June 29, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against TerraForm and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TerraForm shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a common shareholder of TerraForm.

9.     Defendant TerraForm is incorporated under the laws of the Delaware, with its principle executive offices located at 200 Liberty Street, 14th Floor, New York, New York 10281.  The Company's common stock trades on the NASDAQ under the symbol "TERP."

10.     Defendant Brian Lawson ("Lawson") is and has been the Chairman of the Company's Board.

11.     Defendant Carolyn J. Burke ("Burke") is and has been a director of TerraForm at all times during the relevant time period and a member of the Special Committee of the Board.

12.     Defendant Christian S. Fong ("Fong") is and has been a director of TerraForm at all times during the relevant time period and a member of the Special Committee of the Board.

13.     Defendant Harry Goldgut ("Goldgut") is and has been a director of TerraForm at all times during the relevant time period.

14.     Defendant Richard Legault ("Legault") is and has been a director of TerraForm at all times during the relevant time period.

15.     Defendant Mark McFarland ("McFarland") is and has been a director of TerraForm at all times during the relevant time period and a member of the Special Committee of the Board.

16.     Defendant Sachin Shah ("Shah") is and has been a director of TerraForm at all times during the relevant time period.

17.     Defendants Lawson, Burke, Fong, Goldgut, Legault, and McFarland are collectively referred to herein as the "Individual Defendants."

18.     The Individual Defendants, along with Defendant TerraForm, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.     Defendant TerraForm owns and operates over 4,200 MW of diversified high-quality solar and wind assets in North America and Western Europe underpinned by long-term

contracts. TerraForm Power is sponsored by BAM, a leading global alternative asset manager with over $515 billion in assets under management. BEP and affiliates of BAM held approximately 62% of TERP common stock as of the TERP record date.

### The Company Announces the Proposed Transaction

20.     On March 17, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> BROOKFIELD, NEWS, March 16, 2020 (GLOBE NEWSWIRE) -- Brookfield Renewable Partners L.P. ("Brookfield Renewable" or "BEP") (TSX: BEP.UN; NYSE: BEP) and TerraForm Power, Inc. ("TerraForm Power" or "TERP") (Nasdaq: TERP) today announced that they have entered into a definitive merger agreement for Brookfield Renewable to acquire all of the outstanding shares of Class A common stock of TerraForm Power, other than the approximately 62% currently owned by Brookfield Renewable and its affiliates.
>
> Each share of Class A common stock of TerraForm Power will be acquired for consideration equivalent to 0.381 of a Brookfield Renewable unit. For each share of TerraForm Power's Class A common stock held, TERP shareholders will be entitled to receive, at their election, either Class A shares of Brookfield Renewable Corporation ("BEPC shares") or limited partnership units of Brookfield Renewable ("BEP units").
>
> The Special Committee of the Board of Directors at TerraForm Power (the "Special Committee"), comprised solely of non-executive, independent directors of TerraForm Power, has unanimously recommended that TERP shareholders approve the transaction. The Special Committee believes the transaction is fair to and in the best interests of TERP and its unaffiliated shareholders.
>
> "This is a compelling transaction that creates significant value for investors in both companies through a simplified corporate structure and continued sponsorship from Brookfield Asset Management," said Sachin Shah, CEO of Brookfield Renewable. "We are pleased to have reached an agreement for a combined business with a longstanding track record of creating value for shareholders through all economic cycles, where investors will benefit from a globally diversified mandate, supported by significant access to capital and one of the strongest investment grade balance sheets in the sector."
>
> He continued, "The form of consideration through BEP units or the new BEPC shares will allow TERP shareholders to choose how to most efficiently participate in the transaction, either through a partnership or corporate structure."

Mac McFarland, Chair of the Special Committee, said, "We are pleased to have reached this agreement with Brookfield Renewable and believe it is in the best interests of TERP and its shareholders. Since receiving Brookfield Renewable's initial proposal in January, the Special Committee has conducted extensive due diligence. With the assistance of our independent advisors, we have concluded that Brookfield Renewable's improved proposal, which includes an increase in the exchange ratio, provides an immediate realization of value and upside potential. With the transaction, TERP shareholders will benefit from access to a broader growth mandate that includes the acquisition of global, multi-technology renewable power assets and development opportunities, as well as increased access to capital and liquidity, underpinned by an investment grade balance sheet."

The combined company will be one of the largest publicly-traded, globally-diversified, multi-technology, pure-play renewable power platforms, with total assets of approximately $50 billion and expected annual funds from operations of approximately $1 billion.

**Transaction Details**

As consideration for the transaction, TERP shareholders can elect to receive, for each share of TerraForm Power Class A common stock held, either BEPC shares or BEP units. Consideration for each share of Class A common stock of TERP will be equivalent to 0.381 of a BEP unit. TERP shareholders who do not make any election will receive BEPC shares. There is no limit on the number of TERP shares that may be exchanged for BEPC shares or BEP units.

As previously announced, Brookfield Renewable also intends to make a special distribution of BEPC shares to its unitholders. BEPC is a Canadian corporation and will be listed on the TSX and NYSE. The BEPC shares are structured with the intention of being economically equivalent to a BEP unit, including identical distributions, as and when declared, and will be fully exchangeable at any time, at the shareholder's option, for a BEP unit on a one-for-one basis. As such, offering TERP shareholders the right to elect to receive BEP units or BEPC shares provides them the option of investing in Brookfield Renewable through a partnership or corporate structure. The exchange ratio will proportionally reflect the contemplated special distribution of BEPC shares to Brookfield Renewable unitholders, which we expect to close concurrently with the closing of the transaction.

The transaction is subject to, among other things, the non-waivable approval of TERP shareholders representing a majority of the outstanding shares of TERP Class A common stock not owned by Brookfield Renewable and its affiliates. The transaction is also subject to other customary closing conditions and is expected to close in the third quarter of 2020.

BMO Capital Markets and Scotiabank are serving as financial advisors and Cravath, Swaine & Moore LLP and Torys LLP are serving as legal counsel to Brookfield Renewable.

Morgan Stanley & Co. LLC and Greentech Capital Advisors are serving as financial advisors and Kirkland & Ellis LLP and Richard, Layton and Finger LLP are serving as legal counsel to the Special Committee.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21.     On June 29, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Management's Financial Projections

23.     The Proxy Statement contains projections prepared by the Company's and Adicet's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     With respect to the *Net Asset Value (NAV) Model* for the Company, the Proxy Statement fails to disclose the line items used to calculate: (i) Adjusted EBITDA; (ii) Cash Available for Distribution; and (iii) Cash Flow to Equity.  Further, the Proxy Statement fails to

disclose the updates and adjustments made to the *NAV Model* during the process leading up to the Merger Agreement.

25.     With respect to the *Five-Year Business Plan Model* for the Company, the Proxy Statement fails to disclose the line items used to calculate: (i) Adjusted Ebitda; and (ii) Cash Available for Distribution.  Further, the Proxy Statement fails to disclose the updates and adjustments made to the *Five-Year Business Plan Model* during the process leading up to the Merger Agreement.

26.     With respect to the *BEP Management Forecasts*, the Proxy Statement fails to disclose the line items used to calculate: (i) Adjusted EBITDA; and (ii) Funds from Operations. Further, the Proxy Statement fails to disclose the updates and adjustments made to the *BEP Management Forecasts* during the process leading up to the Merger Agreement.

27.     With respect to the *Adjusted BEP Forecasts*, the Proxy Statement fails to disclose the line items used to calculate: (i) Adjusted EBITDA; and (ii) Funds from Operations.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction, as it would provide a basis to project future financial performance of the Company.

**Material False and Misleading Statements or Material<br>Misrepresentations or Omissions Regarding the Financial Advisors' Financial Opinion**

29.     The Proxy Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") and Greentech Capital Advisors Securities, LLC ("Greentech") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis (NAV Model Analysis)*, the Proxy Statement fails to disclose: (i) all line items used to calculate

projected cash flow to equity; and (ii) the inputs and assumptions underlying Morgan Stanley's selected discount rates of 4.1% and 5.1%.

31.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis (Five-Year Business Plan Model Analysis)*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; and (ii) the inputs and assumptions underlying Morgan Stanley's selected discount rates of 4.1% and 5.1%.

32.     With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed by Morgan Stanley in the analysis as well as the sources of such price targets; and (ii) the inputs and assumptions underlying Morgan Stanley's selected discount rate of 4.6%.

33.     With respect to Greentech's *Discounted Cash Flow Analysis of TerraForm*, the Proxy Statement fails to disclose: (i) the line items used to calculate cash flow to equity; (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying Greentech's selected discount rate range of 5.95% to 6.45%; and (iv) the inputs and assumptions underlying Greentech's selected perpetual growth rates of 0.75% to 1.25%.

34.     With respect to Greentech's *Discounted Cash Flow Analysis of BEP*, the Proxy Statement fails to disclose: (i) the line items used to calculate cash flow to equity; (ii) the terminal values for BEP; (iii) the inputs and assumptions underlying Greentech's selected discount rate range of 5.92% to 6.42%; and (iv) the inputs and assumptions underlying Greentech's selected perpetual growth rates of 1.25% to 1.75%.

35.     With respect to Greentech's *Sum-of-the-Parts Analyses*, the Proxy Statement fails to disclose: (i) the cash flows from each project within the TerraForm forecasts; and (ii) the inputs and assumptions underlying the discount rates used in the analyses.

36.     With respect to Greentech's analysis of price targets, the Proxy Statement fails to disclose: (i) the individual price targets observed by Greentech in the analysis; and (ii) the sources thereof and reasoning for the selection of such sources.

37.     Lastly, the Proxy Statement fails to disclose the timing and nature of the past services provided by Morgan Stanley for any of the parties to the Proposed Transaction.

38.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of TerraForm within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TerraForm, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 14, 2020                                              Respectfully submitted,


By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*